# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

SUSSI DALTON, individually and
on behalf of all similarly situated
individuals                                          :

      Plaintiff,                              :

vs.                                                  :   CA 09-00563-CB-C

CARDWORKS SERVICING, LLC,                            :

      Defendant.                              :

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on the parties' Joint Motion for Preliminary Approval of Class Settlement Agreement (Doc. 16), filed August 4, 2010 (the "Initial Joint Motion"); the Declaration of Earl P. Underwood, Jr. in Support of Plaintiff's Motion for Preliminary Approval (Doc. 19), filed August 30, 2010; Plaintiff's Brief in Support of Preliminary Approval of Class Settlement (Doc. 21), filed September 6, 2010; and the parties' Joint Motion for Preliminary Approval of Class Settlement (Doc. 27), filed November 11, 2010 (the "Second Joint Motion"). After consideration of the two motions filed and the evidence submitted by the parties, it is the undersigned's **RECOMMENDATION** that the Second Joint Motion be **GRANTED**, the Initial Joint Motion be deemed **MOOT**, and that the Court **ADOPT** the further recommendations of the undersigned, set forth in the conclusion of this Report and Recommendation, regarding dissemination of Class Notice and other procedures necessary

before a Fairness Hearing can be conducted in this matter.

## Factual and Procedural Background

Plaintiff Susi Dalton filed a Complaint (Doc. 1) on August 28, 2009 alleging that Defendant CardWorks sent her a debt collection letter that violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Plaintiff specifically alleges that the language in the letter requiring her to "notify [debt collector] in writing within 30 days after receiving this notice [to] dispute the validity of [the] debt" is "inaccurate and misleading" and violates 15 U.S.C. § 1692g(a), which provides that a consumer can within 30 days after receipt of a debt collectors notice dispute the validity of a debt, but sets no requirements as to the manner in which a consumer must communicate (*i.e.*, communications must be in writing) (*see* 15 U.S.C. § 1692g(a)(3)). (Doc. 1, ¶¶ 8-14.) Plaintiff further alleges that she brought "this action on behalf of himself [sic] and all members of the class composed of persons who have been [or] were subjected to collection activity by [CardWorks] that was in violation of the FDCPA of the type(s) in this transaction and who are entitled to some or all of the relief requested herein." (Doc. 1, ¶ 18 (pp. 4-5).) CardWorks answered the Complaint on October 7, 2009 (Doc. 10), denying both Plaintiff's factual allegations and that the case is appropriate for class action treatment, and asserting the affirmative defenses of failure to state a claim and bona fide error under 15 U.S.C. § 1692k(c).

On August 4, 2010, the parties filed their Initial Joint Motion (Doc. 16) requesting that the Court certify a class and preliminarily approve class settlement. Because the parties' Initial Joint Motion alone did not provide the Court with sufficient evidence to make a

preliminary evaluation, the undersigned, on August 13, 2010, ordered the parties to supplement the evidentiary record before the Court. (*See* Doc. 17.) The Initial Joint Motion requested that an "opt-in" class be certified under Rule 23, which the undersigned believes is in violation of that rule. (*See* Doc. 22, Order, pp. 3-4 ("To the extent the Settlement Agreement contemplates an 'opt-in' class (as opposed to an 'opt-out' class); it is my view that such a class cannot be certified under Rule 23.") (citing cases).) Rather than recommend that the Court deny the Initial Joint Motion, the undersigned held a hearing with the parties on October 12, 2010 to allow them to explain the propriety of employing an "opt-in" class here or, if the parties were amenable to using an "opt-out" class with a claims made mechanism, how that change would, if at all, affect the proposed settlement. (*See* Docs. 22 & 23.)

At that hearing, the parties were not receptive to altering their settlement to include an "opt-out" class, and the undersigned issued an order on October 15, 2010 (Doc. 24) laying out various reasons why an "opt-in" class cannot be certified consistent with the requirements of Rule 23, including the fact that the parties' "opt-in" approach would fail to bind all class members who failed to submit a claim, which would likely result in thousands of potential claims going unresolved, potentially leading to myriad new class actions arising from this defendant's same conduct. *See Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206-07 (5th Cir. 1981) ("It is undisputed that the purpose of Rule 23 is to prevent piecemeal litigation to avoid: (i) a multiplicity of suits on common claims resulting in inconsistent adjudications; and (ii) the difficulties in determining res judicata effects of a judgment."); *In*

*re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 220 F.R.D. 195, 209 (S.D.N.Y. 2003), *reversed by Estate of Kern v. Siemens Corp.*, 393 F.3d 120, 124 (2nd Cir. 2004) ("It is axiomatic that the purpose of a class action is to resolve finally the claims of all members of a class so that future litigation need not occur."). The undersigned then gave the parties another opportunity to present this Court with a revised settlement agreement that included an "opt-out" class. (*See* Doc. 24.) On October 28, 2010, Plaintiff filed an unopposed motion for additional time to file a revised settlement pursuant to the undersigned's October 14, 2010 Order, in which they informed the Court that "[t]he parties have conferred and have agreed to propose an 'opt-out' settlement." (Doc. 25.) That revised proposed Settlement Agreement is annexed to the Second Joint Motion now before the Court.

## Discussion

"Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *1 (S.D. Fla. June 15, 2010) (citations omitted). The Court's initial task is to make a "preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Id.*; *see also Bennet v. Behrina Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (listing the factors courts in the Eleventh Circuit consider). Our preliminary evaluation here necessarily includes determining whether a class can and should be certified, consistent with the requirements of Rule 23. *See Outten v. Capital Mgmt. Servs., L.P.*, No. 09-22152-CIV, 2010 WL 2194442, at *1-*5 (S.D. Fla. Apr. 9, 2010) (addressing Rule 23 requirements for a settlement class in a case arising out of

alleged violations of the FDCPA); MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.632 (2004) (noting that where a case "is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined").

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). Rule 23(a) requires a putative class to meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* FED. R. CIV. P. 23(a); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). When, as here, certification is sought pursuant to Rule 23(b)(3), a court must make two additional findings, specifically: "(1) that common questions of law or fact predominate over questions affecting only individual members ('predominance'); and (2) that a class action is superior to other available methods for adjudicating the controversy ('superiority')." *Vega*, 564 F.3d at 1265. While a district court must not decide the merits of the case at the class certification stage, it "can and should consider the merits . . . to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Vega*, 564 F.3d at 1266 (citations omitted); *see also In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 609 (N.D. Ga. 1997) (noting that the class certification stage is a hybrid of the motion to dismiss stage and the summary judgment stage, "in that the court looks beyond the pleadings but does not inquire into the merits of the case") (citation omitted). Further, courts

may take into account a proposed settlement when deciding a motion to certify a class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997).

    A.    <u>Class Definition and Standing</u>

"Before analyzing the Rule 23(a) requirements, or as part of the numerosity inquiry, a court must determine whether the class definition is adequate." *County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 666 (S.D. Fla. 2010) (citation and internal quotation marks omitted). "A class should be accurately defined; certification should be denied where the class definition is overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Outten*, 2010 WL 2194442, at *2 (citation and internal quotation marks omitted). Here, the Settlement Class is defined as:

> [A]ll persons in the United States who received from CardWorks the form collection letter [that Plaintiff received],[1] between August 28, 2008 and August 28, 2009.

(Doc. 27, Ex. 1 [proposed Settlement Agreement], p. 1.) Such a group is readily identifiable.

Thus, the Court turns to standing. The named Plaintiff has adequately demonstrated that she and the other members of the Putative Class have standing to seek relief in this case. To have standing, a plaintiff must show (1) an "injury-in-fact," (2) a causal connection between the alleged injury and defendant's challenged action, and (3) that "the injury will be redressed by a favorable decision." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)

---

[1]     The collection letter (Doc. 27, pp. 14-15) is annexed as Exhibit A to this Report and Recommendation.

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  All members of the Putative Class meet all three prongs.  They have allegedly received (1) a deceptive collection letter in violation of the FDCPA (*see* Doc. 21-1, Decl. of Sussi Dalton in Supp. of Joint Mot. for Prelim. Approval of Class Settlement, ¶¶ 2-4) sent by (2) Defendant (*see id.*), and (3) class members may receive relief through a judgment in this Court in their favor.  Accordingly, Plaintiff and the Putative Class have standing to bring this case.  *See Outten*, 2010 WL 2194442, at *2.

B.     Rule 23(a) Requirements

1.     **Numerosity**

Rule 23 requires a class to be "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  The Eleventh Circuit has recognized that, as a general rule, a class of less than 21 members is inadequate, and a class of more than 40 members is adequate.  *See Helms v. ConsumerInfo.com, Inc.*, 236 F.R.D. 561, 564 (N.D. Ala. 2005) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  Here, "[t]he parties estimate that the Class for which certification is sought contains over 18,000 potential members."  (Doc. 21, p. 3.)  Obviously, joinder of that amount is impracticable, and, accordingly, the parties have demonstrated that the Putative Class is sufficiently numerous.

2.     **Commonality**

Commonality requires that there be "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  This is a "relatively light burden" that "'does not require that all the

7

questions of law and fact raised by the dispute be common' . . . or that the common questions of law or fact 'predominate' over individualized issues." *Vega*, 564 F.3d at 1268 (quoting *Cox*, 784 F.2d at 1557)). Rather, "[c]ommonality simply requires that there be at least one issue that affects all or a significant number of proposed class members." *Camafel Bldg. Inspections, Inc. v. Bellsouth Advertising & Publishing Corp.*, Civil Action No. 1:06-CV-1501-JEC, 2008 WL 649778, at *8 (N.D. Ga. Mar. 7, 2008) (citation omitted). "Allegations of a common course of conduct by defendants affecting all class members will satisfy the commonality requirement." *Outten*, 2010 WL 2194442, at *3 (citations omitted).

The seminal issue in this case is whether the language in CardWorks's letter requiring the recipient to "notify [debt collector] in writing within 30 days after receiving this notice [to] dispute the validity of [the] debt" violates 15 U.S.C. § 1692g(a), which provides that a consumer can within 30 days after receipt of a debt collectors notice dispute the validity of a debt, but sets no requirements as to the manner in which a consumer must communicate (*i.e.*, communications must be in writing) (*see* 15 U.S.C. § 1692g(a)(3)). (*See* Doc. 1, ¶¶ 8-14.) Moreover, the letter sent to Plaintiff is a "form collection letter" (Doc. 16, Ex. 1, p. 1)—which by definition is standardized—making it "likely that [all] issues can be resolved without individualized factual or legal inquiries." *Outten*, 2010 WL 2194442, at *3. Accordingly, the particulars of this case satisfy the commonality requirement.

### 3. **Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A class

representative must possess the same interest and suffer the same injury as the class members in order to be typical. . . . [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. Commonality and typicality are related, but [t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Outten*, 2010 WL 2194442, at *3 (quoting *Vega*, 564 F.3d at 1275) (internal quotations marks omitted). And like commonality, typicality is not a demanding test. *See City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D. Fla. 2010).

Plaintiff's claim is typical of those of the rest of the Putative Class here because she was sent the same "form collection letter" sent to the rest of the Putative Class. And she seeks relief based upon the same legal theory as the rest of the Putative Class. S*ee Shelley v. AmSouth Bank*, No. CIV.A.97-1170-RV-C, 2000 WL 1121778, at *4 (S.D. Ala. July 24, 2000) (holding that typicality is established where "the claims or defenses of the class and the class representative arise from the same event or pattern or practice" and/or "are based on the same legal theory" (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984))). Accordingly, the typicality requirement is met here.

### 4. **Adequacy**

Rule 23(a)(4) requires that "representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the

representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (citation omitted).

Here, as explained above, the alleged conduct towards Plaintiff is identical to other Putative Class members. Thus, no inherent conflicts of interest exist. In addition, Plaintiff has submitted a declaration in support of the Joint Motion wherein she states she understands her responsibilities as a representative for the Putative Class,[2] indicates her willingness to serve as one, and indicates that she is neither employed by nor related to any of her counsel. (Doc. 21-1.) Counsel for Plaintiff has also submitted a declaration to attest to his qualifications and experience. (Doc. 19.) Accordingly, Plaintiff and Plaintiff's counsel have demonstrated that they can adequately represent the Putative Class.

C.   Rule 23(b)(3) Requirements

1.   **Predominance**

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common[;] only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). But "[t]he class

---

[2]     Specifically, Plaintiff declares she understands that: (1) "as a class representative I have the responsibility to see that the lawyers prosecute the case on behalf of the entire class, not just myself"; (2) "I may have to testify at a deposition and/or trial and provide documents and information for use in the case"; (3) "the case cannot be dropped or settled without protecting the class members," which "normally means that the other members of the class have to get a fair monetary settlement of their claims"; and (4) "the Court has to approve any settlement or disposition on behalf of the class." (Doc. 21-1, ¶ 7.)

issues subject to generalized proof must predominate over issues subject to individualized proof." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 276 (N.D. Ala. 2009). "In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Outten*, 2010 WL 2194442, at *4 (citations and quotation marks omitted). The one—predominate— question common to all members of the Putative Class is whether language in CardWorks's "form collection letter" violates the FDCPA. "Given the standardized nature of the alleged pattern of conduct, a general determination can be made here whether the FDCPA was violated." *Id.* (citation omitted). Accordingly, it is clear that questions in common predominate over individual questions, should any exist.

2.    **Superiority**

Rule 23(b)(3) sets out four specific considerations pertinent to determining whether a class action is superior to other forms of action:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ.P. 23(b)(3). Like the court in *Outten*, also an FDCPA case certified for settlement, we too find:

that a class action is superior to other forms of action given the large number of potential claims, the comparatively small statutory damages each individual Putative Class member would be entitled to, the need for consistent litigation, and the doubtful benefit to the unnamed class members of controlling the litigation themselves. The potential difficulties in managing the class are likely to be limited and the existence of a proposed settlement suggests that these limited difficulties may never arise.

2010 WL 2194442, at *4. Accordingly, here too, a class action is superior to other forms of action.

### D. Certifying the Settlement

A settlement will be certified so long as it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986; *see also* FED. R. CIV. P. 23(e)(2). The Eleventh Circuit has

identified the following factors as relevant to our review of whether a class settlement's terms are fair, reasonable and adequate: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1318 (11th Cir. 2009) (quoting *Bennett*, 737 F.2d at 986), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, --- U.S. ----, 130 S. Ct. 2869 (2010). For purposes of preliminary approval, the undersigned concludes that the while it is too early in the approval process to determine whether the fourth and fifth factors will ultimately weigh against the fairness of this settlement proposal, the first three factors—at least as of the date of this recommendation—indicate that the settlement is fair, reasonable, and adequate.

First—and foremost—as Plaintiff points out in her brief in support (Doc. 21, p. 8), there appears to be a circuit split—recognized, but not yet resolved, by the United States Supreme Court—regarding whether the requirement in CardWorks's "form collection letter" that disputes must be communicated "in writing" (Doc. 1, ¶¶ 8-14) violates the FDCPA. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, --- U.S. ----, 130 S. Ct. 1605, 1610 n.3 (2010) ("Because the question was not raised on appeal, the Court of Appeals did not address whether Carlisle's inclusion of the "in writing" requirement violated § 1692g. We likewise express no view about whether inclusion of an "in writing" requirement in a notice to a consumer violates § 1692g, as that question was not presented in the petition for certiorari. *Compare Graziano*[ *v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991)] (reading § 1692g(a)(3) to require that "any dispute, to be effective, must be in writing"), *with Camacho*[ *v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005)] (under § 1692g(a)(3), "disputes need not be made in writing").") (internal citation omitted). Thus, success at trial is not guaranteed.

Next, the range of possible settlements is limited in this case by statute to the lesser of $500,000 or 1 per centum of CardWorks's net worth. 15 U.S.C. § 1692k(a)(2)(B). CardWorks's counsel, in the Settlement Agreement (attached as Exhibit 1 to the Second Joint Motion) represents that 1% of CardWorks's net worth as of the relevant date—December 31, 2009—is approximately $109,000.[3] (Doc. 27, pp. 3-4.) The parties' proposed Settlement

---

[3] CardWorks has also submitted *in camera* an officer's certificate attesting to this, but has asked that its "contents—except for the fact that the net worth does not exceed a certain amount—be

13

Agreement provides that "[i]n consideration of the full and complete settlement, release and discharge of all claims of the Class Rep and the Class against CardWorks, and subject to the provisions of this Settlement Agreement and all applicable orders of the District Court, CardWorks agrees to pay up to, and in no case more than, $100,000," with $3,000 going to Plaintiff, $35,000 going to Class Counsel, and "up to, but in no case more than, $62,000" going to establish a Class Fund from which all costs associated with providing notice and distributing settlement funds to the Class will be deducted prior to distribution of pro-rata payments up to $10 to each member of the Class who submits a claim form. (Doc. 27, pp. 4-5.) While the establishment of a total potential amount ($100,000) almost equal to the maximum amount the Class would be entitled to under the statutory cap ($109,000) points strongly toward the acceptance of the settlement, *see Outten*, 2010 WL 2194442, at *5, the undersigned finds that the proposed Settlement Agreement's provision for specific payments to Plaintiff—of $3,000—and the putative Class Counsel—of $35,000—***while potentially reasonable***, is premature.

That is because

> [t]o comply with Rule 23(e), the district court ***must thoroughly review the attorney's fees agreed to by the parties in the proposed settlement agreement***. *See Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). [Moreover, i]n an FDCPA case, the defendant is liable for "the costs of

---

kept confidential and not made public," or, if necessary, it be filed under seal. For purposes of preliminary approval of the class settlement, the undersigned will rely on CardWorks's counsel's representation and the *in camera* submission. However, CardWorks is **ORDERED** to file a public version of the officer's certificate and attached financial statement no later than **ten (10) days** prior to the Fairness Hearing.

the action, together with a reasonable attorney's fee" ***to be determined by the court***.  15 U.S.C. § 1692k(a)(3).

*Henderson v. Eaton*, No. Civ.A. 01-0138, 2002 WL 31415728, at *4 (E.D. La. Oct. 25, 2002) (emphasis added).  "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees."  *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980).[4]  To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees.  *See id.*  "The purpose of this salutary requirement is to protect the nonparty members of the class from unjust or unfair settlements affecting their rights" as well as to minimize conflicts that "may arise between the attorney and the class [and] between the named plaintiffs and the absentees."  *Id.* at 1327-28; *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1296 n.9 (11th Cir. 1999) ("[T]he district court has an independent supervisory duty to assess the appropriateness of the fee award apart from any agreement reached by plaintiff and defense counsel."); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988) ("The court's order on attorney's fees must allow meaningful review – the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation.") (citation omitted); *Rodriguez v. Fuji Sushi, Inc.*, No. 6:08-cv-1869-Orl-22KRS, 2009 WL 1456444, at *3 (M.D. Fla. May 22, 2009) ("The court 'must thoroughly review the attorneys' fees agreed to by the parties,' even when it 'finds the settlement agreement to be untainted by

---

[4]     The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.  *See id.* at 1209.

collusion, fraud, and other irregularities.'" (quoting *Strong*, 137 F.3d at 850)). Accordingly, the propriety of payments to Plaintiff and—moreover—to the putative Class Counsel is something to be taken up at the Fairness Hearing, after submission of evidence and briefing regarding the same. *See, e.g., Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 746-49 (E.D. Pa. 2009) (final approval order, in which court discusses procedural history, including the fact that after the court preliminarily approved the class settlement, it sent notice to the class, prior to fairness hearing, which included amount class counsel sought in compensation).

## CONCLUSION

In light of the foregoing, the undersigned **RECOMMENDS** that the Second Joint Motion (Doc. 27) be **GRANTED** and the Initial Joint Motion (Doc. 16) be deemed **MOOT**.

The undersigned further **RECOMMENDS**:

1.      That the Court preliminarily certify for settlement purposes an "opt-out" class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) consisting of: all persons in the United States who received from CardWorks the form collection letter annexed as Exhibit A to this Report and Recommendation, between August 28, 2008 and August 28, 2009.

2.      That the Court appoint Susi Dalton to be Class Representative.

3.      That the Court appoint Kenneth J. Reimer, Esq. and Earl P. Underwood, Jr., Esq. to be Class Counsel pursuant to Fed. R. Civ. P. 23(g).

4.      That the Court preliminary approve the proposed Class Settlement (Doc. 27, Ex. 1 (pp. 5-22)), as the undersigned finds the proposed settlement fair, reasonable and adequate, subject to further consideration at a Fairness Hearing, as provided for below.

5.     That the Court approve the appointment of Steve Tilghman as the Claims Administrator, and further approve the form of Notice provided as Exhibit C to the Proposed Class Settlement (Doc. 27, Ex. 1 (pp. 17-22)) (the "Class Notice").

6.     That the following manner for distribution of Class Notice to Class members be implemented:  CardWorks shall arrange to have the Class Notice sent to all Class members in substantially the proposed form by first class mail, postage prepaid no later than 60 days before the date set for the Fairness Hearing.  Class members shall then have until 30 days before the date set for the Fairness Hearing to either (1) exclude themselves from the settlement ("opt-out"), (2) object to the fairness of the settlement, or (3) enter an appearance in this matter.  Objections should be sent to the Court, Class Counsel, and Counsel for CardWorks, and should include reasons for objecting to the proposed settlement.  To receive a share of the settlement funds, Class members must submit a completed Claim Form (Ex. B to the proposed Class Settlement (Doc. 27, p. 16)) postmarked by no later than 30 days before the date set for the Fairness Hearing.

7.     That the Court require Class Counsel to file—at least ten days before the Fairness Hearing—the following with the Court: (1) a sworn statement attesting to compliance with the their obligations as to Class Notice (which recommended obligations are set forth above); (2) a motion for award of attorney's fees, costs and expenses, including appropriate evidence to allow the Court to make its determination as to the propriety of the request(s); and (3) a public version of the officer certificate and attached financial statement submitted in camera on August 26, 2010 (see Magistrate Judge's Report & Recommendation,

p. 14 n.3).

8.      That the Court set a Fairness Hearing to consider the Settlement and any objections thereto, and to determine, among other things:

- Whether the Class should be finally certified pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3);

- Whether the Settlement should be approved as fair, adequate, reasonable, and consistent with the public interest;

- Whether Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement, and whether Class Counsel's petition for attorneys' fees and reimbursement of costs and expenses should be approved; and

- To consider such other matters as the Settlement Agreement contemplates or the Court may deem just and proper.

Any Class member may appear at the hearing. However, to preserve this ability to appear, the Class member must, in a mailing post-marked by 30 days before the the date set for the Fairness Hearing (a) notify the Court, Class Counsel, and Counsel for CardWorks of his or her intent to appear, (b) include with this notice a statement indicating their objections to the settlement, and (c) any evidence the individual would like the Court to consider at the fairness hearing. Any person who fails to object in one of the manners provided above will be deemed to have waived their ability to object to the proposed Class Settlement.

9.      That the Court find that the Class Notice to be provided to Class members as discussed in paragraphs 5 and 6 above—and filed as Exhibit C to the proposed Class Settlement (Doc. 27, Ex. 1 (pp. 17-22))—to be the best means of providing notice practicable under the circumstances and, when completed, shall constitute due and sufficient notice of

18

the Class Certification, the proposed Settlement and the Fairness Hearing to all persons affected by and/or entitled to participate in the class action and settlement reached by the parties, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

10.     That the Court allow the Parties until ten days after the Fairness Hearing to file a motion for final approval of the settlement.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

Judge.

     **DONE** this the 18th day of November, 2010.

s/ WILLIAM E. CASSADY

**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. ALA. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[1] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[1]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED. R. CIV. P. 72(b)(2).