**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SUSSI DALTON, Individually and** | ) | |
| **on behalf of all similarly situated** | ) | |
| **individuals,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 09-00563-CB-C** |
| | ) | |
| **CARDWORKS SERVICING, LLC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION AND MEMORANDUM
IN SUPPORT OF AWARD FOR ATTORNEYS' FEES,
<u>REIMBURSEMENT OF COSTS AND AWARD OF INCENTIVE FEE</u>**

Come now the Plaintiffs, and move this Court for a total award of for attorneys' fees and costs for services rendered in successfully obtaining a common benefit settlement of the class in the above referenced matter, and for payment of an incentive fee to Plaintiff. Specifically, class counsel seeks $35,000, which includes fees and costs, plus $3,000.00 as an incentive payment for the plaintiff.

**<u>BACKGROUND OF CASE</u>**

The settlement of this matter is the culmination of lengthy negotiation process. This matter began through the claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. § 1691 ("FDCPA").

Plaintiffs contend that CardWorks engaged in unlawful practices relating to disclosures required by the Fair Debt Collection Practices Act (FDCPA). CardWorks has denied and continues to deny any and all claims and contentions alleged by the Plaintiff in this litigation and

continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, disclosures, acts or omissions alleged, or that could have been alleged herein.

The settlement calls for the establishment of a $100,000 settlement fund. The initial Complaint in this action was filed on August 28th 2009. That Complaint alleged, among other things, that CardWorks used a form debt collection letter at issue violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). Specifically Plaintiffs alleged that CardWorks improperly disclosed the right of a consumer to dispute a debt.

The defendant, CardWorks, agreed to pay up to, but in no case more than, $100,000, with $3,000 paid to Ms. Dalton, as an incentive payment for her service as the class representative and $35,000 for Class Counsels' fees and costs. After the payment of the fees, costs and incentive payment, the settlement called for the remainder, $62,000, be available to pay Class members' claims, the costs of providing notice and administration of the settlement.

## THIS IS A COMMON BENEFIT SETTLEMENT AND COUNSEL ARE ENTITLED TO A PERCENTAGE OF THE VALUE

Given the complexities inherent in all class litigation, trial courts are given "great latitude in formulating attorneys' fee awards subject only to the necessity of explaining its reasoning" so that appellate review can be meaningful. *Waters v. International Precious Metals Corp.,* 190 F.3d 1291, 1293 (11th Cir. 1999) (quoting *McKenzie v. Cooper, Levins & Pastko, Inc.* 990 F.2d 1183, 1184 (11th Cir. 1993). A district court's award of attorney's fees will not be reversed or second-guessed without a demonstration that the district court abused its discretion. *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 770 (11th Cir. 1991).

As a general proposition, attorneys' fees are awarded to class counsel through the court's traditional and inherent equity powers where the action has bestowed a common benefit on the

class. The common benefit doctrine is based on a long line of United States Supreme Court cases, including *Mills v. Electric Auto Lite Co.,* 396 U.S. 375 (1970).

> While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. *See Fleischmann Corp. v. Maier Brewing Co.,* 386 U.S., at 718-719, 87 S. Ct. at 1407. To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense. This suit presents such a situation.

> \*       \*       \*

> The fact that this suit has not yet produced and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale. Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a 'common fund' for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement or expenses.

> \*       \*       \*

> Other cases have departed further from the traditional metes and bounds of the doctrine, to permit reimbursement in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.

*Mills,* 365 U.S. at 391-94.

The *Mills* holding was reaffirmed by the Supreme Court in *Hall v. Cole,* 412 U.S. 1, 6 (1973), and in *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240 (1975).

The Eleventh Circuit Court of Appeals has made it clear that attorneys' fees payable to class counsel under the common benefit doctrine should be based on a percentage of the fund. In discussing the common benefit doctrine, the Eleventh Circuit explained in *Camden I Condominium Assn. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991):

Under this doctrine, fee reimbursement is permitted in the following circumstances:

(1) when litigation indirectly confers substantial monetary or nonmonetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named defendant who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members. H. Newberg, *Attorney Fee Awards* § 2/01 at 28-29 (1986). *See also Mills v. Electric Auto-Lite Co.* 396 U.S. 375, 90 S. Ct. 616, 24 L Ed. 2d 593 (1970)

*Id.* at 771.

In discussing how the fee should be determined, a percentage of the fund or lodestar, the

*Camden I.* court concluded that:

Henceforth in this circuit, attorneys' fees awarded from a common fund **shall** be based upon a reasonable percentage of the fund established for the benefit of the class. The lodestar analysis shall continue to be the applicable method used for determining statutory fee shifting awards.

*Id.* at 774. (Emphasis added.)

The court in *Camden I* rejected setting attorneys fees in common fund cases based on a

lodestar analysis and class counsel's fees should be based on a percentage of the common benefit

derived from this action.[1]

The Eleventh Circuit has observed that there are "no hard and fast rule[s] mandating a

certain percentage of a common fund which may reasonably be rewarded as a fee, because the

amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774.

While recognizing that a "majority" of the fee awards fell within the 20%-30% range, the

---

[1]        The fact that this Court has authority pursuant to certain federal statues allegedly violated by the Defendants to shift the burden of paying the fees to the Defendants had this matter gone to judgment does not alter the fact that the award of counsel fees in the settlement should be determined by a percentage of the fund, rather than a statutory fee analysis. While in a statutory fee case, the fee awarded to Plaintiffs' counsel is sometimes based on the lodestar formula, when a settlement of a class action results in a common fund and/or common benefit, it is appropriate for the court to employ a percentage of the fund analysis in awarding the fee. *See Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Florin v. Nationsbank*, 34 F.3d 560 (7th Cir. 1994); *Stanton v. Boeing Co.,* 327 F.3d 938, 967 (9th Cir. 2003); *Brytus v. Spang & Co.* 203 F.3d 238, 246-47 (3rd Cir. 2000).

*Camden I* court noted that fees could reach the upper limit of 50% in certain cases. *Id.* at 774-75; *accord, Waters*, 190 F.3d at 1294-95.

Further, it is appropriate for the Court to award a percentage of the fund to class counsel to be divided by counsel per their agreement. The attorneys are in agreement as to the division, and are capable of making their own equitable division. See *Longden v. Sunderman*, 979 F.2d 1895 (5th Cir. 1992); *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990); *In re Catfish Antitrust Litigation,* 939 F. Supp. 493 (N.D. Miss. 1996); *In re Ampicillin Antitrust Litigation*, 81 F.R.D. (D. D.C. 1978).

Given the substantial risk, expense, and success of class counsel, a fee and expense award of $35,000 is reasonable, particularly in comparison to the relief afforded to the class and percentages awarded in other cases. Further, an incentive fee payable to representative plaintiffs of $3000.00 each is reasonable and should be approved.

## THE REQUESTED FEE IS REASONABLE

It is important to understand that an award of attorneys' fees "should be structured as an incentive for lawyers to risk achieving the highest possible benefits for the greatest number of Class Members." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1189 (S.D. Fla. 2006). The fees allowed in a case must also serve the function of covering situations where "attorneys have received no fees and litigated at substantial risk to themselves and in the best interest of the Class." *Id.*

The court in *Camden I* noted that the majority of the common fund fee awards fall between 20% to 30% of the fund, and the Eleventh Circuit directed trial courts within this circuit to view that range as a "benchmark" which may be adjusted in accordance with the individual circumstances of each case given the factors set forth in *Johnson v. Georgia Highway Express,*

*Inc.*[2] 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

Based on documents, submitted in camera by the defendant, 1% of its net worth, during the relevant time period, was approximately $109000. (See Doc 28.) This means that under the statute, specifically 15 U.S.C. § 1692k(a)(2)(B), the maximum recovery of statutory damages was limited to $109,000. The request for $35,000 for the payment of fees and expenses is reasonable and falls within the *Camden I* benchmark. The fee requested, plus costs, represents only 35% of the class relief, within the benchmark established by the court in *Camden I*. As such, the requested fee and expense award is reasonable and is further justified after employing the *Johnson* factors.

**THE REQUESTED FEES ARE REASONABLE
UNDER THE RELEVANT JOHNSON FACTORS**

As this Court is well aware, the *Johnson* court adopted twelve factors in determining the reasonableness of court awarded fees. The Fifth Circuit expressly permitted fees to be enhanced or multiplied to arrive at a final fee. The factors are:

(1)   The time and labor required;

(2)   The novelty and difficulty of the questions involved;

(3)   The skill required to form the legal service properly;

(4)   The preclusion of other employment by the attorney due to the acceptance of the case;

(5)   The customary fee;

(6)   Whether the fee is fixed or contingent;

(7)   The time limitations imposed by the client or the circumstances;

---

[2] *Johnson* is of course binding. See Bonner *v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981).

(8)     The amount involved and the results obtained;

(9)     The experience, reputation and ability of the attorney;

(10)    The undesirability of the case;

(11)    The nature and length that the professional relationship with the client;

(12)    Awards in similar cases.

*Johnson,* 488 F.2d at 717-719.

## 1.     __Time and Labor Required.__

The factual and legal complexities of this case, some of which are noted above, required counsel to expend significant time in the pursuit of this litigation and the claims of the class. (See affidavit of Earl P. Underwood, Jr.) Given the particular circumstances of this case, and the overlapping and complex issues which were involved, it was imperative that each class counsel be knowledgeable of the issues of both fact and law. While duplication of attorneys' time should be avoided, in complex cases where the issues are multifaceted, some duplication is to be expected. Any apparent duplication was necessitated by the overlapping issues of fact and law presented in this case, and the specific areas of expertise possessed by class counsel.

Based on the time records maintained by the attorneys representing the class, a total of 158.9 attorney hours were reported to counsel. (See Affidavit of Earl P. Underwood, Jr.) Additionally in this case, class counsel utilized legal assistants to collect and analyze data. No additional claim is being made for legal assistant time.

Some courts have found it helpful to conduct a lodestar check on the requested fees to gauge the reasonableness of the awarded percentage based on the time spent on the matter. The lodestar analysis should not be substituted for the percentage of the fund analysis, but is used to make sure the percentage selected is not too high or too low. Courts in this circuit have been

"mindful of the fact that this cross-check is not to be used as a backdoor avenue of using the lodestar method instead of the percentage of the fund method." *In re Sunbeam Sec. Litig.,* 176 F.Supp. 2d 1323, 1336 (S.D. Fla. 2001).

Further, in conducting a lodestar cross check, the court should be mindful not to penalize counsel who achieved a timely result for class members in need of immediate relief. "The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 n. 5, citing *Camden I*, 946 F.2d at 773-74.

A lodestar analysis simply multiplies the number of hours times a reasonable hourly rate. In this case, the hourly rates charged by the attorneys representing the class $350 per hour. (See Exhibit 1, Affidavit of Earl P. Underwood, Jr.) In this matter an hourly fee award would actually exceed the fee requested.

When conducting a lodestar analysis, the court looks to the market rates in the community where the matter was to be tried. As reported by the National Law Journal 2007, hourly rates for partners in the Birmingham and Mobile legal community average between $335 and $340. (See Affidavit of Earl P. Underwood, Jr.) Those firms primarily handle defense of actions, including complex actions. An hourly rate of $297 an hour is conservative when compared to the rates of Birmingham partners handling complex litigation matters. (See Affidavit of Earl P. Underwood, Jr.) In this case, each class counsel has extensive experience and should be measured using partner rates. (See Affidavit of Earl P. Underwood, Jr.) The rate of

$350 per hour is consistent with the average rate in the Mobile and Birmingham markets and is reasonable.

Using a total of 158.9 attorney hours with a billing rate of $350[3] the unenhanced lodestar totals $55,615.00. The Court could set the fee based on time alone, at a rate $220.26 per hour, since class counsel are only seeking $35,000 for fees and expenses. In any event, the bar against contingent fee enhancements of the lodestar does not apply in common fund cases. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002). Even if the requested fee resulted in an enhancement of the lodestar by a factor it would still be justified considering the contingent nature of the case. *See Vizcaino,* 290 F.3d, 1043, 1051 ("on lodestar crosscheck, multiplier of 3.65 appropriate based on extensive review of awards in similar cases").

Class action settlements and fee awards routinely result in enhancement multipliers. See *In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 524 (E.D. N.Y. 2003) (3.5 multiplier); *In re NASDAQ Mkt.-Makers Antitrust Litig.* 187 F.R.D. 465, 470 (S.D. N.Y. 1998) (awarding 14% of $4.027 billion fund, representing 3.97 multiplier; *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 998-99 (D. Minn. 2005) (awarding 25% of $80 million settlement fund, representing 4.7 multiplier); *In re Charter Commc'ns, Inc., Sec. Litig.,* No. 1506, 2005 U.S. Dist. LEXIS 14772, at 56 (E.D. Mo. June 30, 2005) (awarding 20% of $146 million settlement fund, representing 5.6 multiplier); *In re Aetna Inc. Sec. Litig.,* No. 1219, 2001 U.S. Dist. LEXIS 68, at 59 (E.D. Pa. Jan. 4, 2001) (awarding 30% of $82.5 million settlement fund, representing 3.6 multiplier); *In re DaimlerChrysler Sec. Litig.,* No. 00-993/00-984/01-004 (JJF) (D. Del. Feb. 5, 2004) (awarding 22.5% of $300 million settlement fund, representing 3.2508 multiplier); *In re CVS Corp. Sec. Litig.,* No. 01-11464 (JLT) (D. Mass. Sept. 7, 2005) (awarding 25% of $110

---

[3] An hourly rate of $350.00 is conservative. For example, in the HealthSouth Securities Litigation, affidavits filed in the U.S. District Court for the Northern District of Alabama stated hourly rates for Birmingham partners working on that case from $440 to $450 per hour, and rates for some New York firms ranged from $465 to $900 per hour.

million settlement fund, representing 3.27 multiplier); *In re Busiprone Antitrust Litig.,* 01-7951 (S.D. N.Y. Apr. 11, 2003) (awarding multiplier of 8.46); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 198 (S.D. N.Y. 1997) (awarding multiplier of 5.5); *In re Rite Aid Corp. Sec. Litig.,* 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), *vacated and remanded on other grounds,* 396 F.3d 294 (3rd Cir. 2005) (awarding fee equal to multiplier of 4.07 and recognizing that "multipliers in this range are fairly common") (citation omitted); *Weiss v. Mercedes-Benz of N. A.m., Inc.*, 899 F. Supp. 1297, 1304 (D. N.J. 1995) (awarding fee equal to multiplier of 9.3); *In re RJR Nabisco, Inc., Sec. Litig.*, No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702 (S.D. N.Y. Aug. 24, 1992) (awarding fee equal to multiplier of 6.0). Thus, the time and labor required to accomplish the partial settlement supports a $35,000 fee and expense award.

**2.      Novelty and difficulty of the Questions Involved.**

Courts in this circuit recognize that large class actions involving various legal theories are, by their nature, difficult to prosecute. *Yates v. Mobile County Personnel Bd.,* 719 F.2d 1530, 1535 (11th Cir. 1983) (extremely complicated litigation requires thorough and detailed research of almost every question involved); *Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 537 (S.D. Fla. 1988) (observing that the size of the class, the difficult theories of liability, and the always-troublesome problems associated with damages makes class litigation extremely complex), *aff'd,* 899 F.2d 32 (11th Cir. 1990); *R. C. by Alabama Disabilities Advocacy Program v. Nachman*, 992 F. Supp. 1328, 1334 (M.D. Ala. 1997) ("[T]he nature and scope of the relief are among the factors that contribute to complexity and difficulty of this case").

The issues presented in this matter, both procedurally and factually, involved questions of first impression both in this district, and throughout the 11th Circuit. The novelty and/or

difficulty of the issues involved justify a significant percentage of the fund to be awarded as a fee.

### 3.    <u>The Skill Requisite to Perform the Legal Services Properly</u>.

The favorable resolution of this litigation against well-financed and skilled Defendants in the manner in which it has been resolved, and the period it took to do so, could not have been accomplished without a significant degree of skill in both advocacy and negotiation. In assessing quality, the Court may consider the quality of the opposition as well as the quality of plaintiff's counsel. *Ressler v. Johnson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). The opposition in this matter was knowledgeable and well financed. The result obtained is very favorable in light of the defense, and justifies the requested fee.

### 4.    <u>Preclusion of Other Employment</u>.

As reflected in the affidavit filed herein, class counsel devoted substantial time to this litigation, which precluded class counsel from accepting other legal employment. The time and commitment required to bring this litigation to its present state involved a substantial commitment of resources of class counsel, particularly in light of the extensive amount of time devoted to this matter and the size of counsel's law firm. As such, work on this matter necessarily precluded performing any other tasks. *See Allapattah*, 454 F. Supp. 2d at 1209 ("This factor requires the dual consideration of otherwise available business which is foreclosed because of conflicts of interest arising from the representation, and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the case for other purposes."); *Yates,* 719 F.2d at 1535 (determining that this factor should raise the fee award because the expenditure of 1,000 billable hours necessarily had some adverse impact on the attorney's ability to accept other work). This was a substantial commitment of resources of

Class Counsel, particularly in light of the size of the Class Counsel's law firm. This fourth *Johnson* factor, therefore, clearly weighs in favor of the requested fee award.

> **5.** **Customary Fee Charged By Class Counsel is a Contingency Rather an Hourly Rate.**

The customary fee charged by the counsel in this type of case is at least forty (40%) percent. It is doubtful that any of the individual class members would have been in a position to pursue their claim anywhere in the country on a lesser percentage contingency contract. It is highly unlikely that any class counsel would have agreed to accept this case on an hourly rate.

As Judge Posner recognized in *Matter of Cont'l Illinois Sec. Litig.,* courts should look to the marketplace to evaluate the reasonableness of a percentage fee:

> The judicial task might be simplified if the judge and the lawyers spent their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character . . . . The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.

962 F.2d 566, 572 (7th Cir. 1992); *accord In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) (requiring that "common fund" percentage awards be determined by the market rate for contingency fee agreements on a prospective basis at the outset of the case.)

Other courts have reached similar conclusions about reliance upon the market price for legal services in these types of complex cases. For example, in *Pinto v. Princess Cruise Lines, Ltd.,* the district court adopted Judge Posner's reasoning and concluded that "[i']n private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients . . . . These percentages are the prevailing market rates throughout the United States for contingent representations." 2007 WL 853431, at 6 (S.D. Fla. Feb. 16, 2007) *see also Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (40% contractual award if case went to trial). The evidence in this case establishes that, in Alabama, the market price for services in this type

of case for a single client would range between 33-1/3% - 50% (See Affidavit of Earl P. Underwood, Jr.)

Based on a market analysis, the requested fee of 30% is below market and is reasonable.

**6.** **Whether the Fee is Fixed or Contingent.**

The risk involved and the fact that class counsel took this case on a contingency fee basis should be a substantial factor in determining the percentage of the fund, which would be a reasonable fee. There are a significant number of cases recognizing the risk taken by class counsel in such a case, and justifying fee enhancements on this basis.

Class counsel recognizes that the Supreme Court in the case of *City of Burlington v. Dague,* 405 U.S. 557 (1992), held that courts may not enhance a fee award to reflect a loss or contingency in fee shifting cases. However, the *Dague* decision is not applicable in common fund/common benefit situations, and the contingent multiplier remains applicable in testing the reasonableness of the percentage of the fund awarded when compared to an enhanced lodestar calculation. *Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Florin v. Nationsbank,* 34 F.3d 560 (7th Cir. 1994); *Stanton v. Boeing Co.,* 327 F.3d 938, 967 (9th Cir. 2003); *Brytus v. Spang & Co.,* 203 F.3d, 238, 246-47 (3rd Cir. 2000); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1054 (9th Cir. 2002). *See also Dikeman v. Progressive Exp. Ins. Co.,* 2008 WL 786618 (11th Cir. 2008) (attorneys fees in class settlement without finding of statutory violation determined based on common fund analysis.)

The risk faced by class counsel in this litigation is readily apparent. Despite the possibility of never receiving any compensation or reimbursement for expenses advanced in this litigation, counsel remained committed to obtain a fair and just result for the class. The risk of

non-recovery in this case was great. As stated above, this case was not a "copy cat" case, which was filed after others, had developed a viable legal theory.

The fee in a class action is necessarily contingent, since in general no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis. *Ressler*, 149 F.R.D. at 654. Any fee to be recovered as compensation by class counsel in this matter was contingent upon obtaining a recovery for the class. Class counsel has borne the entire risk of failing to achieve a successful and substantial result for the class, including expending significant funds for expenses from his own resources. Nothwithstanding the vigorous and competent efforts of counsel, success in this litigation were never assured.

In determining the amount of the fee in a common fund case, courts should focus on the amount of contingent risk involved and enhance the award accordingly. The Southern District of Florida recently spoke at length on this subject, offering the following observations that are equally applicable here:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent out lay of out-of-pocket sums by Class Counsel, and the fact that risks of failure and nonpayment in a class action are extremely high. Cases recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee award. *Goldberger v. Integrated Res., Inc.* 209 F.3d 43, 54 (2nd Cir. 1000) (citation omitted); *Accord Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.").

*      *      *

> Class Counsel have received no compensation during the course of this litigation and have also incurred significant expenses in litigating on behalf of the Class, none of which would have been recovered if the case had not been successfully concluded. From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery for the Class and hence no compensation. Class Counsel's investment of time and expenses has always been at risk and wholly contingent on the result they achieved. Although Class Counsel have

> successfully concluded the litigation, this result was not foreseeable at the outset. The relevant risks must be evaluated from the standpoint of Plaintiff's counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight. The financial risks borne by Class Counsel fully support the financial risks borne by Class Counsel fully support the appropriateness of the fee requested.

*Pinto,* 2007 WL 853431, at 5; *accord Allapattah,* 454 F. Supp. 2d at 1214-17 ("A contingency fee arrangement often justifies an increase in the aware of attorneys' fees . . . . [W]ithout a contingent fee, 'very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing.'").

When measured by the risk assumed by class counsel, the requested fee is reasonable and should be approved.

### 7. The Time Limitation Imposed.

Given the nature of the litigation, class counsel does not believe that there is any enhancement in regard to this factor.

### 8. The Amount Involved and Results Obtained.

The benefits obtained in this litigation are significant, particularly when compared to the maximum potential recovery. Considering the risks of litigation, the settlement benefit is substantial. The results justify the requested fee.

### 9. The Experience, Reputation and Ability of the Attorneys.

Each counsel for the class has significant experience in complex litigation, including the prosecution of class actions. The diverse nature of the experience of class counsel was necessary for the successful prosecution of this matter, and each member of class counsel's firm added significantly to the prosecution of this matter. Class counsel submit that the experience and

ability of the class counsel greatly enhanced and facilitated the prosecution and resolution of this litigation. (See Affidavit of Earl P. Underwood, Jr.)

10. **The Undesirability of The Case.**

In the context of this case, "undesirable" means that counsel had to commit an unknown but substantial amount of time and resources to a case involving complicated financial allegations and an extremely complicated field of law. The estimated percentage chance of winning or losing was impossible to judge at the beginning of the case, primarily because there was sparse case law regarding the important "merits" issues and the Defendants possessed all of the relevant documents that Plaintiffs would need to prove their case.

Thus, for purposes of choosing a fair attorneys fee percentage, this case should be viewed as highly "risky", weighing on the side of a high fee percentage. Courts often elevate percentage fee awards due to the absence of prior or related litigation that could be of value to Class Counsel in prosecuting the case. *E.g., City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2nd Cir. 1974); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D. N.Y. 1992) ("[T]his is not a case where plaintiff's counsel can be cast as jackals . . . . They did all the work on their own.").

By any reasonable view, this case was extremely risky:  the issues were complex; the legal hurdles many and substantial; the opponents ably defended. In this case, Class Counsel should be rewarded for taking on a case that is "undesirable" due to any number of things, including thorny factual circumstances and the possible negative financial outcome of a case.

Courts have also made clear that if, by their skill and determined efforts, plaintiff's counsel ultimately secure a settlement, that fact is not relevant to assessing the risk they assumed *at the case's inception. Skelton v. General Motor Corp.*, 860 F.2d 250, 258 (7th Cir. 1988), *cert.*

*denied*, 493 U.S. 810 (1989) ("The point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them."); *Lindsey Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3rd Cir. 1976). 'Undesirability" and relevant risks must be evaluated from the standpoint of plaintiff's counsel *as of the time they commenced the suit*, and not retroactively with the benefit of hindsight. *Emery v. Hunt,* 132 F. Supp. 2d 803, 811 (D. S.D. 2001), *rev'd on other grounds*, 272 F.3d 1042 (8th Cir. 2001); *Cook v. McCarron*, 1997 WL 47448, at 18 (N.D. Ill. Jan 30, 1997). *aff'd sub nom. Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998).

**11.     The Nature and Length of The Professional Relationship With The Client.**

Given the nature of the litigation, class counsel does not believe that there is any enhancement in regard to this factor.

**12.     Awards in Similar Cases.**

The Southern District of Florida recently surveyed fee awards in contingent class action litigation and focused on the "private market place in setting a percentage fee." *Pinto*, 2007 WL 853431, at 6. The district court recognized that "[i]n private litigation, attorneys regularly contract for contingent fees between 30% and 40% with their clients," *id.*, and then directed its attention to a prominent study[4] concluding that "[m]ost fee awards . . . were between *20% and 40%* of the gross monetary settlement. *Id.* emphasis added). Similarly, the Southern District of New York explained the following:

> In considering the reasonableness of a fee award in a common fund case, the court should also consider the percentage of the total settlement the fee request represents. Traditionally, federal courts have awarded fees in the 20% to 50%

---

[4] Thomas E. Willging, Laural L. Hooper, and Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts:  Final Report to the Advisory Committee on Civil Rules 69 (*Federal Judicial Center 1996).  *See also Thomas E. Willging, et. al., An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges*, 72 New York Univ. L. Rev. l74, 155 (1996).

> range in class actins. Fifty percent of the fund appears to be an approximate upper
> limit on fees and expenses.

*Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D. N.Y. 1997) (citing several cases where an award over 40% was granted; *Greene v. Emersons, Ltd.*, [1987] Fed. Sec. L. Rep. (CCH) 93.263 (S.D. N.Y. May 20, 1987) (46.2% of common fund in securities case awarded as fees and expenses): *In re Ampicillin Antitrust Litig.,* 526 F. Supp. 494 (D. D.C. 1981) (45% of $7.3 million settlement funds awarded in fees and expenses); *Beech Cinema, Inc., v. Twentieth Century Fox Film Corp.,* 480 F. Supp. 1195 (S.D. N.Y. 1979) (53% of settlement fund)).

The Third Circuit cited with approval an analysis submitted by Professor John C. Coffee of Columbia University, which considered statistical data from federal cases and found: (1) a 31% average fee in securities class actions involving settlements over $10 million; (2) a 27-30% medium fee range over a two year period in selected federal district courts; and (3) fees in excess of 20% were "fairly standard" in "mega fund" class actions involving settlements between $100 and $500 million. *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 298 (3rd Cir. 2005) (affirming a fee of 25% of $319 million recovery).

Likewise, in *In re Lucent Techs, Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 441 (D. N.J. 2004), the district court published a chart listing class action settlements over $100 million, noting fees awarded range between 20% and 30% of the settlement fund.

Courts from other jurisdictions have awarded fees of 35% of the fund or higher. For example, a 36% fee was approved in *In re U.S. Bancorp Litig.* 291 F.3d 1035, 1038 (8th Cir. 2002). That class action was filed because the defendant bank supplied confidential customer account information to unaffiliated third parties for marketing purposes. The Eighth Circuit found no abuse of discretion with a $1.25 million fee, which constituted "36% [of the common

fund] to class counsel who obtained significant monetary relief on behalf of the class." *Id.; accord, In re Control Data Sec. Litig.,* No. 3-85-1341 (D. Minn. Sept. 23, 1994) (awarding class counsel fees equal to 36.96% of the gross settlement fund); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F. Supp. 680 (D. Minn. 1975) (class counsel awarded 37% of a $45 million common fund).

Other courts have reached similar results. In *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D. N.Y. 1993), the court concluded that, in light of the contingent nature of the case and the tenacity of the class counsel, the requested fee of $14.2 million, representing 33.8% of the proposed settlement fund of $42 million, was reasonable. The court noted that class counsel cited some 37 cases nationwide in which fees equaled or exceeded 33% of the common fund, some of similar magnitude to the *Crazy Eddie* suit. *Id.* at 326.

Awards of 30% or more of a settlement fund are common. *Ressler,* 149 F.R.D. at 655; see also*, In re: FPI/Agretech Securities Litigation,* 105 F.3d 469 (9th Cir. 1997) (30%); *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1986) (38%); *Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987) (40% of recovery); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412 (E.D. N.Y. 1981) (36.2%); *Clarke v. Amerada Hess Corp.*, 500 F. Supp. 1067, 1075 (S.D. N.Y. 1980) (30%); *In re Activision Securities Litigation,* 723 F. Supp. 1373 (N.D. Cal. 1989) (30%); *Seiffer v. Topsy's Internat'l, Inc.,* 70 F.R.D. 622, 635 n. 12 (D. Kan. 1976) (30% fee award "within the range of allowable fees"); *In re General Instrument Securities Litigation*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) (33-1/3%); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373 (E.D. Pa. 2000) (30%).

### 13. <u>Other Factors.</u>

In addition to the *Johnson* factors, there are other pertinent factors, which should be considered in setting an appropriate percentage of the common fund as an attorney's fee. Those

factors are (1) the time required to reach settlement; (2) whether there are any substantial objections by other class members to the settlement terms or the fees requested; (3) whether there are any non-monetary benefits conferred upon the class by the settlement; and (4) the economics involved in prosecuting a class action. *Walso Investments, Inc. v. Thenen,* 975 F. Supp. 1468 (S.D. Fla. 1997). Each of those factors justifies the fee requested herein. As noted above, the settlement was not reached until substantial work was performed. There were no substantial objections by class members or any other party to the settlement or the attorneys fees requested herein. No objection to the fee has been filed by any party. Finally, the time and expense devoted by class counsel in reaching the settlement is significant and justifies the award.

## INCENTIVE FEE

In addition to the fee award, the settlement requests a payment of $3,000 to the class representative to compensate her in this action. Incentive awards are customary in class settlements to compensate the representatives for the time spent on the matter. *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D. N.Y. 1997).

## CONCLUSION

Based on the foregoing, a fee in the amount of $35,000 is reasonable and should be awarded by the Court. The requested incentive fee of $3,000 should also be paid to the named Plaintiff.

/s/ Earl P. Underwood, Jr.
Earl P. Underwood, Jr. (UNDEE6591)
Attorney for Plaintiffs
Underwood& Riemer PC
Fairhope, AL 36533-0969
Telephone: (251) 990-5558
Facsimile: (251) 990-0626
epunderwood@alalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2011, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Earl P. Underwood, Jr.
Earl P. Underwood, Jr.
